# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KATRINA BRADLEY, ) | |
| ) | No. 3:17-cv-00495 (RNC) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| SEAN J. STACKLEY, ) | |
| Acting Secretary of the Navy, ) | JULY 19, 2017 |
| ) | |
| *Defendant*. ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION FOR REMAND

Alyssa Peterson, Law Student Intern
Madeline Ranum, Law Student Intern
Jenna Rowan, Law Student Intern
Joshua Wilson, Law Student Intern
Aaron P. Wenzloff, ct28616
Michael J. Wishnie, ct27221
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520-9090
Telephone: (203) 432-4800
Facsimile: (203) 432-1426

*Counsel for Plaintiff*

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

For more than twenty years, Katrina Bradley has suffered from the deprivations and stigma that attend an other-than-honorable ("OTH") discharge from the Navy—a discharge she incurred based on minor disciplinary infractions and in retaliation for having filed a sexual harassment complaint against an officer in her chain of command. After retaining undersigned counsel, Ms. Bradley applied to the Board for the Correction of Naval Records ("BCNR" or "Board"), an administrative board created by Congress with the authority to review erroneous or unjust discharges, to upgrade her discharge. The Board dismissed her claims in a cursory decision, which the Navy now admits is legally deficient because it "failed to address the applicability of the Military Whistleblower Protection Act ("MWPA")." Def.'s Mot. to Remand, ECF No. 13 at 1. Far from an isolated failure, this is an example of the Board's systemic failure to apply the MWPA. Moreover, the Navy's concession fails to acknowledge multiple *other* errors in its decision in this case, including the refusal to consider as evidence the sworn testimony of Ms. Bradley or her witness and the failure to address Ms. Bradley's claim that she was overcharged by the Navy in violation of its own regulations.

In other recent cases in Connecticut, a remand to a military board has resulted only in the Board adhering to its prior decision, papering over its errors with more elaborate agency decisions, and delay in the veteran obtaining judicial review. By contrast, in a different recent case in this district, when a disabled Army veteran declined an offer of remand, Chief Judge Hall adjudicated the case on summary judgment, clarified the relevant law, and ordered a remand with instructions. In that case, on remand, the Army granted relief.  Ms. Bradley respectfully requests that this Court deny the motion to remand and adjudicate her claims.

## FACTS AND PROCEEDINGS

Plaintiff Katrina Bradley is a veteran of the United States Navy and a Connecticut resident. Complaint ¶ 7 (ECF No. 1). In 1994, she enlisted in the Navy hoping to make her father proud. *Id.* ¶¶ 9–10. After completing basic training, Ms. Bradley reported to Patrol Squadron Ten at Naval Air Station (NAS) Brunswick in Brunswick, Maine, where she served as a hazardous materials clerk. *Id.* ¶ 14. Unlike her diverse hometown, high school, and basic training location, NAS Brunswick was an almost entirely white community, leaving Ms. Bradley feeling isolated as an African-American woman. *Id.* ¶¶ 15, 18. Additionally, Ms. Bradley is gay, but she had to conceal that fact due to the military's Don't Ask Don't Tell policy in effect at the time. *Id.* ¶ 16.

In order to feel more comfortable in this new and unfamiliar environment, Ms. Bradley sought a mentor and was excited to meet Ensign Anthony Williams, one of the few African Americans on base with her. Compl. ¶¶ 29–31. One night, Ensign Williams invited Ms. Bradley to his barracks where he gave her a beer and touched and rubbed her leg, making her immediately uncomfortable. *Id.* ¶ 32. When she attempted to leave, Ensign Williams pressured her to stay while touching her face. *Id.* ¶ 33. Ms. Bradley refused his advances and left the room, feeling afraid, humiliated, and especially vulnerable as a closeted gay woman. *Id.* ¶¶ 33–34. After this incident, Ensign Williams continued to harass Ms. Bradley by making unwelcome comments in the hallways, including words to the effect of "What happened?" or "You should come to the barracks again." *Id.* ¶ 35.

Ms. Bradley eventually worked up the courage to file a formal sexual harassment complaint against Ensign Williams. Compl. ¶ 37. A 1993 instruction from the Secretary of the Navy required that the Navy investigate all reported incidents of sexual harassment, but in violation of this rule, no Navy personnel followed up with Ms. Bradley regarding her complaint.

2

*Id.* ¶ 40. Additionally, Ensign Williams revealed that he knew of Ms. Bradley's complaint, telling her that she had "messed up" and that she would regret filing it. *Id.* ¶ 44. Ensign Williams continued his harassment by frequently insulting Ms. Bradley with sexual slurs and taunting her for being a failure who would not amount to anything in life. *Id.* ¶ 45.

Before filing the complaint, Ms. Bradley had no formal disciplinary history in the Navy. Compl. ¶ 47. However, after filing the complaint, the Navy began to change Ms. Bradley's work schedule frequently, waiting until the last minute to inform her of when she was working and not posting her schedule in advance. *Id.* ¶ 48. Due to this exhausting and confusing schedule, the Navy charged Ms. Bradley with a non-judicial punishment (NJP) for leaving her place of duty and watching a movie in the duty office, for being tardy to Captain's Call, and for falling asleep on duty. *Id.* ¶ 51. For these three minor issues, Ms. Bradley's command charged her with four violations of Articles 86 and 92 of the Uniform Code of Military Justice. *Id.* ¶ 52.

Consequently, Ms. Bradley's command gave her a Captain's Mast, an NJP, during which one command member made a statement to the effect of "I promise I will get you out of the Navy." Compl. ¶¶ 53–54. In November 1995, the Navy recommended Ms. Bradley for Administrative Separation by reason of Misconduct due to Commission of a Serious Offense, despite her having only a minor disciplinary record. *Id.* ¶ 62. The Navy discharged Ms. Bradley in January 1996 under Other-than-Honorable ("OTH") conditions. *Id.* ¶ 63.

Ms. Bradley applied to the BCNR in 2016, claiming the lifetime stigma of an OTH was an error and injustice in light of the circumstances of her service and her discharge. Compl. ¶¶ 66–67. In support of her application, Ms. Bradley submitted an affidavit that testified to her sexual harassment, her formal filing of a complaint, and Ensign Williams's statement that she had "messed up" by filing it. *Id.* ¶ 68; *see also* Declaration of Joshua Wilson, dated July 19,

2017.  Ex. B at ¶¶ 19–20, 27 ("Wilson Decl."). Additionally, she submitted a declaration from Ms. Khairah Walker, her romantic partner during her time in the Navy, that testified to Ensign Williams's harassment of Ms. Bradley. Compl. ¶ 70; *see also* Wilson Decl., Ex. C at ¶ 7.

In July 2016, the BCNR rejected Ms. Bradley's application concluding that her discharge was "proper as issued." ECF No. 1, Ex. A (BCNR Decision) at 2. Despite the sworn statements of Ms. Bradley and Ms. Walker, the BCNR found "no evidence in the record and [Ms. Bradley] provided none, to support [her] assertions" of sexual harassment or discrimination. *Id*. The BCNR did not address Ms. Bradley's contention that her command took unfavorable personnel action against her in reprisal for the complaint and the BCNR did not address application of the Military Whistleblower Protection Act, which it was required to do under its own regulation. Compl. ¶¶ 73–74; *see also* 32 C.F.R. § 723.3(e)(4). Further, the BCNR did not respond to Ms. Bradley's argument that the Navy violated its own regulations by multiplying charges against her and by overcharging her for minor offenses. Compl. ¶ 75.

In 2017, Ms. Bradley filed suit in this Court, challenging the BCNR's actions under the Administrative Procedure Act ("APA") and the Fifth Amendment of the U.S. Constitution. Compl. ¶¶ 85–109. The Navy now moves to remand the case to the BCNR.

## ARGUMENT

This Court should decline to remand Ms. Bradley's case. A remand is appropriate only in limited circumstances, none of which are present here. Moreover, a remand to the BCNR would likely be futile, would delay judicial review of her claims, and would subject Ms. Bradley again to the same procedural deficiencies that she now challenges, including those related to the MWPA. As other cases have shown, a lack of judicial guidance leads to military boards adhering to prior decisions, forcing veterans to return to District Court to seek relief after substantial

delay. *See Shepherd v. McHugh*, No. 3:11-cv-00641-AWT, ECF No. 83 (D.Conn. filed Sept. 30, 2013) (after remand by then-Chief Judge Thompson to Army Board for Correction of Military Records, board adhered to prior denial); *see also Naval Discharge Review Board Reading Room*, Docket No. MD16-01068, http://boards.law.af.mil/NAVY_DRB_2016_Marine.htm [hereinafter Docket No. MD16-01068] (after agreement that Naval Discharge Review Board would reconsider application of Connecticut veteran in lieu of filing federal complaint, board adhered to prior denial). This Court should decline to remand Ms. Bradley's case.

If, however, the Court does order a remand, it should include in its order safeguards sufficient to ensure timely and fair adjudication of Ms. Bradley's application, including: (A) holding that the affidavits of Ms. Bradley and Ms. Walker constitute substantial evidence in the administrative record; (B) ordering the BCNR to grant Ms. Bradley the right to conduct discovery, as provided in the Navy's instruction implementing the MWPA; (C) directing the BCNR to grant the right to an in-person hearing before the Board, at which Ms. Bradley may be represented by counsel; and (D) instructing the BCNR to adjudicate Ms. Bradley's application in accordance with mandatory deadlines set by the Court.

**I.    A REMAND IS APPROPRIATE ONLY IN LIMITED CIRCUMSTANCES.**

Courts have the authority to consider requests by the government to remand claims to the administrative agency that first rendered the decision, "preserv[ing] [the] Court's scarce judicial resources by providing federal defendants the opportunity to 'cure their own mistakes.'" *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010) (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). Voluntary remand is appropriate: (1) when new evidence becomes available after an agency's decision was rendered, *see Ethyl Corp.*, 989 F.2d at 523 (granting an agency's motion for voluntary remand where the agency admitted

5

that new evidence developed that undermined the stated basis for its action); and (2) where "intervening events outside of the agency's control" may affect the validity of an agency's actions. *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001).

When an agency requests a remand absent new evidence or intervening events, the reviewing court has discretion over whether to remand. *SKF USA, Inc.*, 254 F.3d at 1029. A remand request may be refused "if the agency's request is frivolous or in bad faith." *Id.*; *see also Lewis v. Sec'y of Navy*, Civil No. 10-0842-RBW, ECF No. 48 (filed Sept. 2, 2014) (denying motion for voluntary remand to the BCNR because it was motivated by a desire to avoid judicial review) (copy attached as Exhibit 1); *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying a remand request because it was based on a potential policy statement that would not have had the effect of binding the FCC). Therefore, an agency's ability to reconsider a decision is not unlimited; rather, an agency may not do so if it would be "arbitrary, capricious, or an abuse of discretion." *Macktal v. Chao*, 286 F.3d 822, 825 (5th Cir. 2002). Courts may also decline to remand when the agency offers reasons that are pretextual in nature or suggest a desire to evade judicial review. *Lutheran Church*, 141 F.3d at 348. A remand is not appropriate in this case.

## II. THIS COURT SHOULD DECLINE TO REMAND MS. BRADLEY'S CASE.

### A. A Remand Would Be Futile.

The BCNR's past decisions demonstrate the futility of a remand in this case. For decades, in approximately 30,000 decisions posted on its website, the BCNR[1] has almost never mentioned

---

[1] Congress established the BCNR to correct naval and marine records in order to remedy errors or injustices. 10 U.S.C. § 1552; 32 C.F.R. § 723.1. It is composed of three civilian members appointed by the Secretary of the Navy. 32 C.F.R. § 723.3. A service member who believes the Navy has violated the MWPA can apply to the Board for relief. *Id.*

the MWPA, let alone engaged in its meaningful application. The Board's decisions are generally so deficient in providing individualized review as to virtually preordain a negative outcome.

First enacted in 1988, and amended in 1994 to cover reports of sexual harassment and unlawful discrimination, National Defense Authorization Act, Fiscal Year 1995, Pub. L. No. 103-337, § 531, 108 Stat. 2663 (1994) (amending 10 USC §1034(c)(2)(a)), the MWPA prohibits "an unfavorable personnel action… as a reprisal against a member of the armed forces for making… a communication… to any person or organization in the chain of command." 10 U.S.C. § 1034 (b)(1)(B)(iv). A "communication" includes a report of "a violation of law or regulation, including… sexual harassment." *Id.* at § 1034(c)(2)(A).

The BCNR is required to make a determination as to the applicability of the MWPA if "it is invoked by the applicant or reasonably raised by the evidence." 32 C.F.R. § 723.3(e)(4). The Navy's rhetoric about the importance of protecting whistleblowers and other survivors of sexual harassment is forceful: "Each member of the [Navy-Marine Corps] team is entitled to be treated fairly, with dignity and respect, and must be allowed to work in an environment free of unlawful discrimination. Additionally, each member is expected to abide by the [Department of Navy] Core Values of Honor, Courage, and Commitment. Sailors, Marines, and civilians who model the Core Values do not engage in negative behaviors such as sexual harassment, and do not condone these behaviors in others." DEPT. OF THE NAVY, OFFICE OF THE SECRETARY, SECNAV INSTRUCTION 5300.26D § 5(a)-(b) (Jan. 3, 2006) (copy attached as Exhibit 2). The MWPA is a central resource for accomplishing these objectives.

Despite congressional enactment of the MWPA more than twenty years ago, the BCNR has almost entirely ignored this statute. Of the BCNR's 30,000 published decisions, only two, Docket Nos. 4797-13 and 5751-15, explicitly address the applicability of the MWPA to the

7

petitioner's application. Wilson Decl., at ¶ 10(b) & Ex. A. In both decisions, it seems that the petitioners explicitly invoked the Act. *Id.* The BCNR has apparently never, in any of the cases surveyed, addressed the applicability of the MWPA because the Act was "reasonably raised by the evidence." *Id.*; 32 C.F.R. § 723.3(e)(4). In at least one decision, the Board should have addressed the MWPA but failed to do so, as Judge Collyer later held on judicial review of the decision. *Penland v. Mabus*, 181 F. Supp. 3d 100, 106 (D.D.C.2016) ("Ms. Penland's Amended Complaint alleges retaliation in violation of the MWPA—a ground for clemency that the BCNR expressly (though wrongly) refused to consider.").

In none of the cases surveyed did the BCNR apparently grant relief directly in response to reprisal claims or on MWPA grounds. Wilson Decl., at ¶ 10(c) & Ex. A. This is not especially surprising. Human Rights Watch reports that the Boards for the Correction of Military Records ("BCMRs"), which includes the BCNR and its sister boards at the Army and the Air Force, almost never grant record corrections for either sexual assault survivors in the armed forces or for military whistleblowers generally. "Of all military whistleblower complaints, less than 1 percent receive some form of relief from the records boards." *Embattled*, HUMAN RIGHTS WATCH, 11 (May 18, 2015), https://www.hrw.org/report/2015/05/18/embattled/retaliation-against-sexual-assault-survivors-us-military. In fact, "alleged *perpetrators* of sexual assault sought and *received* corrections in their records from the Boards far more often than victims, even though victims are much more likely to experience administrative action that might require assistance from the Boards to correct." *Id.* at 11 (emphasis added).

One reason that the Board does not grant MWPA relief is that it apparently does not recognize testimony as carrying any evidentiary weight. Ms. Bradley, for example, supported her claims of racial discrimination and sexual harassment with her own testimony and that of a third

party. *See* Wilson Decl., Ex. B (Affidavit of Katrina Bradley) & Ex. C (Declaration of Khairah Walker). The Board nonetheless found that, "[t]here is no evidence in the record, and you provided none, to support your assertions [of sexual harassment and discrimination]." ECF No. 1, Ex. A at 2.

Moreover, the Board couples this failure to recognize the evidentiary weight of testimony with a refusal to exercise its statutory authority to request further investigation into MWPA claims. The BCNR has in fact *never* exercised its statutory authority, granted under 10 U.S.C. § 1034(g)(2)(B), to request that the Department of Defense or Naval Inspector General gather additional evidence for the BCNR's consideration. *Whistleblower Protection: Actions Needed to Improve DOD's Military Whistleblower Reprisal Program*, GOVERNMENT ACCOUNTABILITY OFFICE, 35 (Feb. 2012). The reports by the GAO and Human Rights Watch, as well as the analysis of BCNR decisions summarized in Wilson Decl., Ex. A, demonstrate the futility of remanding to the BCNR to discharge its obligations under the MWPA and fairly adjudicate Ms. Bradley's claims.

Finally, in the small practice of the Veterans Legal Services Clinic in litigating discharge upgrade cases, remands have often proven futile and dilatory. For example, in *Shepherd*, then-Chief Judge Thompson granted a joint motion to remand a case to the Army board. On remand, the Army adhered to its position, committed additional errors, and prompted a refiling and renewed motion practice before Judge Thompson, significantly delaying resolution. *Shepherd v. McHugh*, No. 3:11-cv-00641-AWT, ECF No. 83. Eventually, the Army settled the case by agreeing to upgrade Mr. Shepherd and paying $37,000 in attorney's fees. Wilson Decl., Ex. E (Modified Settlement Agreement) at ¶¶ 8–9. In another case, after counsel prepared a federal complaint and shared it with the U.S. Attorney's Office in advance of filing, the Navy agreed to

9

reconsider the Connecticut veteran's application before the Naval Discharge Review Board in lieu of litigation. Months later, the Navy board adhered to its position. *Id.*, Docket. No. MD16-01068.[2]

In contrast, in *Cowles*, when the Army offered a remand, the client declined and Chief Judge Hall did not immediately order one. After cross-motions for summary judgment, the court adjudicated the legal claims and then ordered a remand with the law clarified. *Cowles v. McHugh*, 2014 U.S. Dist. LEXIS 138927, ECF No. 42. Doing so resulted both in a clarification of law prior to the case being remanded to the BCMR, as well as, ultimately, relief for a wronged veteran. *Id.* at ECF No. 53 (D.Conn. filed Aug. 26, 2015).

When "'the outcome of a new administrative proceeding is preordained,' a district court may forego the futile gesture of remand to the agency." *Berge v. United States*, 949 F. Supp. 2d 36, 43 (D.D.C. 2013) (quoting *A.L. Pharma, Inc. v. Shalala*, 62 F. 3d 1484,1489 (D.C. Cir. 1995)). Together, the dearth of relief for whistleblowers who appear before the BCMRs, the BCNR's historic negligence in applying the MWPA, and the Navy's refusal to credit undisputed evidence of record virtually preordain a negative outcome. Defendant's motion should be denied.

> **B.     A Remand Would Cause Delay and Subject Ms. Bradley to the Very Legally Deficient Procedures She Challenges.**

In addition to futility, a remand without protection from discrimination and prejudice will cause further delay. Remand is appropriate where "new evidence or later-acquired information demonstrated a potential to change the agency's initial decision" and "where the agency

---

[2] In a different set of cases, an intervening change in the law led Judge Eginton to remand cases to the Army and Navy boards, and based on the intervening legal change, the boards did grant relief. *See Monk v. Mabus*, No. 3:14-cv-00260-WWE, ECF No. 48 (D. Conn. filed Nov. 14, 2014); *Dolphin v. McHugh*, No. 3:12-cv-1578-WWE, ECF No. 76 (D. Conn. filed Nov. 14, 2014). There, the intervening change in the law was the issuance by Secretary of Defense Chuck Hagel of binding guidance to the boards regarding adjudication of PTSD claims, after both lawsuits had been filed in court. There has been no such intervening change in the law in this case.

recognizes the merits of the plaintiff's challenges and is forthcoming about the challenges." *Frito-Lay, Inc. v. Dep't of Labor*, 20 F. Supp. 3d 548, 554 (N.D. Tex. 2014); *see also SKF USA, Inc.*, 254 F.3d at 1028. In these instances, remand preserves judicial economy by providing the defendant the opportunity to cure its own mistakes. *Frito-Lay*, 20 F. Supp. 3d. at 555. Here, there is no new evidence or later acquired information that demonstrates a potential to change the Navy's initial decision. While the Navy has conceded that it should have considered Ms. Bradley's MWPA claim, there is no new evidence in the record to support her assertion that she filed a sexual harassment complaint.

In fact, Plaintiff submitted a Freedom of Information Act ("FOIA") request dated February 6, 2015, seeking, among others things, all complaints and records of any instance of alleged sexual harassment or sexual assault made by Ms. Bradley at any time from her entry into service on or about October 20,1994 up to her discharge on or about January 16, 1996. However, the Navy found no responsive records. Wilson Decl., Ex. D (Navy response to FOIA request) at 1. With no additional evidence, there is no reason to believe the BCNR will change its position after previously finding "no evidence in the record," giving no weight to Ms. Bradley's and Ms. Walker's sworn statements. ECF No. 1, Ex. A at 2. This will cause delay, as Ms. Bradley will have to wait for the new decision to once again appeal to this Court for relief based on the BCNR's unlawful refusal to consider these sworn statements.

Additionally, the Navy has not recognized the merit of Ms. Bradley's challenge to the BCNR's arbitrary and capricious actions with regard to her claims of overcharging and multiplication of charges. On initial consideration, the BCNR did not respond to these claims, except to state that "[t]he Board was not persuaded by the mitigating assertion that [Ms. Bradley's] punishment was too harsh." *See* ECF No. 1, Ex. A at 2. The Board is obligated by law

to respond to all rejected claims raised by an applicant. 32 C.F.R. § 723.3(e)(4). In the Defendant's motion to remand, there is no analysis of these claims and no indication that the BCNR will reconsider them on remand. Def.'s Mot. to Remand, ECF No. 13.

Unlike previous cases where voluntary remand was granted, judicial economy would not be served here. In *Frito-Lay*, the court found judicial economy would be served because the likely remedy, even if the plaintiff prevailed on summary judgment, was remand to the agency. *Frito-Lay*, 20 F. Supp. 2d at 555. However, this Court is authorized to grant a discharge upgrade outright. *See Crane v. Sec'y of Army*, 92 F. Supp. 2d 155 (W.D.N.Y. 2000) (finding Army's failure to comply with its own administrative procedures violated the APA and ordering the plaintiff be reinstated to the Army); *Robinson v. Resor*, 469 F.2d 944 (D.C. Cir. 1972) (finding that the Board failed multiple times to correct an indefensible position that violated due process and elemental justice and ordering the Board to ensure appellant was not given a discharge under other-than-honorable conditions).

In addition to causing delay, a remand would compel Ms. Bradley to resubmit to the same flawed procedures that she filed suit to rectify. In *Shepherd*, the plaintiff consented to a remand to the Army BCMR; however, on remand, the BCMR applied the same flawed procedures and the plaintiff was forced to file an amended complaint, returning to District Court to seek relief. *Shepherd v. McHugh*, No. 3:11-cv-00641-AWT, ECF No. 57 (D.Conn. filed Dec. 3, 2012). The disabled veteran in Docket No. MD16-01068, likewise has no choice now but to seek judicial review in this court. *See* Docket No. MD16-01068. Similarly, on remand in this case, Ms. Bradley would be subjected to the same flawed procedures as during her initial application to the BCNR. For the foregoing reasons, this Court should decline to remand Ms. Bradley's case.

### III. ANY REMAND MUST INCLUDE SAFEGAURDS SUFFICIENT TO AVOID PREJUDICE TO MS. BRADLEY.

Should this Court nevertheless order a remand, the order should include conditions to ensure that Ms. Bradley is not prejudiced. "Remand involves all interested parties and should receive the careful and thoughtful scrutiny of the court not mere deference to the desires of one party." Toni M. Fine, *Agency Requests For Voluntary Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1092 (1996). Attaching appropriate conditions to any remand ordered by this Court is essential to avoid prolonged re-litigation of BCNR errors.[3] Ms. Bradley requests that, in the event this Court orders a remand, it does so on the conditions set forth below, which are necessary to protect her from prejudice as well as ensure the BCNR functions fairly and without discrimination, as Congress intended.

#### A. The BCNR Should be Required to Recognize Sworn Statements as Undisputed Evidence and Explain How It Weighs That Evidence

The Board wrongfully refused to consider relevant evidence supporting Ms. Bradley's application, and this Court's order should impose sufficient conditions upon remand to ensure that the Board properly conducts its fact-finding.

The BCNR attaches a rebuttable "presumption of regularity" to the official actions of public officers, which may be overcome by "substantial evidence to the contrary." 32 C.F.R. § 723.3(e)(2). However, when a petitioner's undisputed, corroborated testimony is insufficient to overcome this presumption of regularity as in Ms. Bradley's case, that presumption presents itself as an absolute barrier to justice. And it is precisely this barrier that the BCNR imposes when it dismisses serious claims, so supported. *See* ECF No. 1, Ex. A at 2 ("Regarding your

---

[3] In one noteworthy case, a U.S. District Court remanded seven times to the BCNR when the BCNR repeatedly failed to address plaintiff's arguments, conduct proceedings in accordance with law, or properly understand facts. *Pettiford v. Sec'y of the Navy*, 774 F. Supp. 2d 86 (D.D.C. 2012).

13

assertions that you were sexually harassed and discriminated against while in the Navy. [*sic*] There is no evidence in the record, and you provided none, to support your assertions.").

The BCNR is charged with "maintain[ing] reasonable bounds of competency, relevancy, and materiality" when considering evidence. 32 C.F.R. § 723.5(b)(1).[4] It was plain error to state that there was no evidence in the record. *See id*. at § 723.3(e)(1) (requiring that the Board consider "all pertinent evidence of record"); *see also id.* at § 723.5(b)(2) & (4) (requiring that the Board consider "documentary evidence" filed in support of an application before the Board, as well as sworn testimony, when conducting hearings). In light of this, Ms. Bradley respectfully requests that if her case is remanded, the Court:

1. Direct that there is undisputed evidence in the record, in the form of sworn statements from Ms. Bradley and Ms. Walker, that Ms. Bradley filed a sexual harassment complaint against Ensign Anthony S. Williams.

2. In the absence of further evidence, require that the BCNR determine whether the sworn statements given by Ms. Bradley and Ms. Walker are sufficient to rebut the presumption of regularity and, if insufficient, explain why.

**B.     The BCNR Should Grant Ms. Bradley the Right to Conduct Discovery**

Ms. Bradley requests that this Court direct the BCNR to grant her the right to receive oral argument, examine and cross-examine witnesses, conduct an evidentiary hearing, and conduct depositions, as provided under Defense Department rules implementing the MWPA. *See* 10 U.S.C. § 1034(g)(2)(c); *DoD Directive 7050.06*, Enclosure 2 § 4(f)(2)(c) (copy attached as Exhibit 3). Additionally, should this Court require the Board to hold a hearing, Ms. Bradley requests that this Court require the Board to allow her to serve interrogatories and request production of evidence. *Id*. at § 4(f)(2)(e)(2).

---

[4] This regulation specifically contemplates evidence produced during hearings before the Board, but its general language and underlying intent both suggest that it be interpreted as establishing minimum criteria for the Board's treatment of evidence generally.

14

Under Department of Defense Directive 7050.06, which establishes the Department's policies to effectuate the requirements of the Military Whistleblower Protection Act, the Secretary of the Navy is required to ensure that the BCNR establishes procedures to resolve an application alleging reprisal. Exhibit 3 at § 4(f)(2). This includes, "*as a minimum*," taking depositions, conducting evidentiary hearings, examining and cross-examining witnesses, and receiving oral arguments. *Id.* at § 4(f)(2)(c) (emphasis added). Additionally, this Directive instructs that, if the Board holds a hearing, the service member be allowed to serve interrogatories and request production of evidence. *Id.* at §4(f)(2)(e)(2). While the Directive includes language making these procedures discretionary, Ms. Bradley requests this Court require the BCNR to comply with these procedures.

Due to the Navy's misconduct, Ms. Bradley's initial application to the BCNR was missing her formal sexual harassment complaint and records surrounding the handling of that complaint. An instruction from the Secretary of the Navy in place during Ms. Bradley's service required all reported incidents of sexual harassment be investigated. Dept. of the Navy, Office of the Secretary, SECNAV INSTRUCTION 5300.26B 2 § 7(d) (Jan. 6, 1993) [hereinafter "INST. 5300.26B"] (copy attached as Exhibit 4). Further, that instruction required feedback be provided to all affected individuals. *Id.* However, no investigation was ever conducted following Ms. Bradley's formal complaint. Ms. Bradley was never provided any feedback or given any information on her report by the Navy, in violation of its own instruction.

The BCNR stated that there was "no evidence in the record" to support Ms. Bradley's assertion of sexual harassment. ECF No. 1, Ex. A at 2. However, Ms. Bradley was deprived of evidence that should have been in the record due to the Navy's misconduct. The Navy was required to investigate Ms. Bradley's complaint and provide her feedback but it did not. Compl.

15

¶¶ 40–42; *see also* Ex. 4 (INST. 5300.26B). Further, despite obligations requiring the Navy to maintain records under the Federal Records Act and the Administrative Procedure Act, the Navy was not able to produce records responsive to Ms. Bradley's FOIA request regarding the sexual harassment complaint she filed. *See* Wilson Decl., Ex. D (Navy response to FOIA request) at 1; *see also* 5 U.S.C. § 552a(e)(5); 44 U.S.C. §§ 3101, 3301. The right to conduct discovery through the procedures outlined above would provide Ms. Bradley with the opportunity to search for and recover evidence to support her BCNR application.

### C. The BCNR Should be Required to Grant Ms. Bradley an In-Person Hearing

Plaintiffs request that this Court direct the BCNR to allow Ms. Bradley an in-person hearing if she should so desire it. *See* 32 C.F.R. § 723.4 (authorizing the BCNR to conduct in-person hearings "in the interest of justice"). The procedural value of in-person hearings is self-evident, but the BCNR has not held a live hearing "in the last twenty years," Eugene R. Fidell, *The Boards for Correction of Military and Naval Records: An Administrative Law Perspective*, 65 ADMIN. L. REV. 499, 502 (2013).

The BCNR's blanket refusal to hold in-person hearings is detrimental to the applications of many former service members, and it has drawn the critical attention of Congress. *See* S. Rep. No. 113-176 at 107 (2014) (directing DoD to report to Congress regarding use of videoconferencing "and other initiatives to increase the number of in-person hearings granted" by record correction boards). If Defendant insists on a remand over Ms. Bradley's objection, the BCNR should be required to exercise its long-dormant authority to permit Ms. Bradley to appear in person with her counsel.

### D. Mandatory Deadlines for Adjudication

On remand, this Court "may . . . set a time limit for action by the administrative tribunal, and this is often done." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) (addressing claims remanded to Social Security Administration). A remand may cause substantial delay if the BCNR is not required to make a decision promptly. *See Shepherd v. McHugh*, No. 3:11-cv-00641-AWT, ECF No. 83. Ms. Bradley respectfully request that if her case is remanded, the Court set the following schedule:

1. If this Court grants discovery, it shall be conducted within 90 days following the Court's remand order;

2. Ms. Bradley shall submit her application to the BCNR, including any supplemental statement containing new or additional evidence, within 60 days after the discovery process ends or, if discovery is not granted, within 60 days of this Court's order;

3. The BCNR shall adjudicate and make a substantive decision on Ms. Bradley's application within 60 days of receipt;

4. Upon an adverse decision by the BCNR, Ms. Bradley shall reinstate her case to this Court's active docket within 30 days of receipt by counsel of the adverse decision.

### CONCLUSION

Ms. Bradley has come to this Court seeking the fairness and justice that evaded her when she first appeared before the BCNR. While the BCNR admits that its review of her case was legally deficient in connection with the MWPA, it has not acknowledged other procedural and substantive violations of the APA and the U.S. Constitution. Compelling her to resubmit her application to the caprices of such deficiencies is no remedy at all. Ms. Bradley respectfully requests that this Court deny Defendant's motion for remand.

Dated: July 19, 2017
New Haven, Connecticut

Respectfully Submitted,

By: /s/ Michael J. Wishnie
Alyssa Peterson, Law Student Intern
Madeline Ranum, Law Student Intern
Jenna Rowan, Law Student Intern
Joshua Wilson, Law Student Intern
Aaron Wenzloff, Supervising Attorney (ct28616)
Michael J. Wishnie, Supervising Attorney (ct27221)
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
*Counsel for Plaintiff*

18

**CERTIFICATION OF SERVICE**

      I hereby certify that on July 19, 2017, a copy of the foregoing Memorandum in Opposition to Defendant's Motion for Voluntary Remand was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Michael J. Wishnie
Michael J. Wishnie (ct27221)
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@ylsclinics.org