```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

KATRINA BRADLEY,                    :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :    Case No. 3:17-cv-495(RNC)
                                    :
RICHARD V. SPENCER,                 :
                                    :
     Defendant.                     :
```

RULING AND ORDER

Plaintiff Katrina Bradley brings this action under the Fifth Amendment Due Process Clause and the Administrative Procedure Act ("APA") challenging a decision of the Board for Correction of Naval Records ("BCNR") denying her application for correction of her naval record. She seeks an upgrade of her discharge status or a reversal and remand to the agency with instructions for further proceedings. Defendant admits that the BCNR erred by failing to consider the Military Whistleblower Protection Act ("MWPA") and moves for a voluntary remand.[1] For reasons explained below, defendant's motion is granted.

I. Background

The complaint alleges the following. Plaintiff, who is African American and gay, enlisted in the Navy in 1994. Shortly after she enlisted, she was the victim of racial profiling by

---

[1] At the time plaintiff filed the complaint, the Acting Secretary of the Navy was Sean J. Stackley. The current Secretary is Richard V. Spencer.

1

military police officers and sexual harassment by one of her male superiors.  The sexual harassment made her feel especially vulnerable as a gay woman who had to be closeted at work due to the military's then-current Don't Ask, Don't Tell policy.  She filed a formal sexual harassment complaint, but the Navy failed to adequately investigate the officer.  Plaintiff's harasser made retaliatory statements to her in response to the complaint, including telling her that she had "messed up" by filing it and that she would regret doing so.  Moreover, after she filed the complaint, her supervisors treated her poorly and targeted her for discipline.  She received non-judicial punishment for four infractions: leaving her place of duty and watching a movie; being tardy to a "Captain's Call"; falling asleep on duty; and failing to pay her phone bill.  Shortly thereafter, command gave her administrative counseling and confined her to barracks, during which time her harasser visited and taunted her.  Formal discharge proceedings followed.  The harassing officer was involved in the process leading to the discharge decision.  In 1996, the Navy discharged plaintiff under Other-than-Honorable ("OTH") conditions following a recommendation for "Administrative Separation by reason of Misconduct due to Commission of a Serious Offense."

In spring 2016, plaintiff applied to the BCNR to correct her naval record to reflect a more favorable discharge.  In

support of her application, she submitted her own affidavit as well as a declaration from a woman who was her romantic partner in 1995. She did not dispute the underlying misconduct but alleged that the OTH discharge was an excessive response to her conduct and that the real reasons for the OTH discharge were discrimination and retaliation.

The BCNR waived the time limit applicable to the filing of plaintiff's application but denied the application, finding that her "punishment was a direct result of [her] actions." Regarding her claims that she was sexually harassed and discriminated against, the BCNR found there was "no evidence in the record, and [she] provided none, to support [her] assertions." The BCNR decision did not discuss a potential retaliation claim, the MWPA, or several of plaintiff's other arguments.

## II. Legal Standard

Courts review "decisions of boards for correction of military records in light of familiar principles of administrative law." Piersall v. Winter, 435 F.3d 319, 321 (D.C. Cir. 2006) (internal quotation marks omitted) (collecting cases). When a district court reviews a final agency action under the APA, it "sits as an appellate tribunal." PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995) (quoting Marshall Cty. Health Care Auth. v. Shalala, 988 F.2d

3

1221, 1225 (D.C. Cir. 1993)).  The court may "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that are "unsupported by substantial evidence."  5 U.S.C. § 706(2).  "Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."  PPG Indus., 52 F.3d at 365 (citations omitted); see also Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Administrative agencies have the inherent power to reconsider their own decisions.  Dun & Bradstreet Corp. Found. v. U.S. Postal Serv., 946 F.2d 189, 193 (2d Cir. 1991) (collecting cases).  Voluntary remand is usually appropriate when new evidence becomes available, see Ethyl Corp. v. Browner, 989 F.2d 522, 523-24 (D.C. Cir. 1993), or when intervening events, such as a new legal decision or passage of legislation,

could "affect the validity" of the original decision, SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (citing Ethyl Corp., 989 F.2d at 524).  However, "[e]ven in the absence of intervening events, upon an agency's remand request, the reviewing court still has discretion over whether to remand."  Sierra Club v. Van Antwerp, 560 F. Supp. 2d 21, 23 (D.D.C. 2008) (citing Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta, 375 F.3d 412, 417 (6th Cir. 2004) ("Although there is no allegation of new evidence or a change in the law in the present case, the same considerations of judicial efficiency apply.")).  In such a case, "if the agency's concern is substantial and legitimate, a remand is usually appropriate."  SKF USA Inc., 254 F.3d at 1029.  Nevertheless, an agency's voluntary request for remand may be denied under limited circumstances.  For example, "[a] remand may be refused if the agency's request is frivolous or in bad faith."  Id. (citing Lutheran Church–Mo. Synod v. FCC, 141 F.3d 344, 349 (D.C. Cir. 1998)).  Moreover, a court may decline to grant a remand if it is clear that a remand would be futile.  E.g., NLRB v. Am. Geri-Care, Inc., 697 F.2d 56, 64 (2d Cir. 1982) (upholding an administrative decision where "reversal and remand would be an idle and useless formality . . . because there is not the slightest doubt that the [agency] would simply reaffirm its order" (citation and internal quotation marks omitted)); see

5

also A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1489 (D.C. Cir. 1995) (declining to remand where "[t]here is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding" (alterations in original) (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969))).[2]

III. Discussion

    A. Voluntary Remand

Remand is appropriate here. The BCNR erred by failing to address the applicability of the MWPA when the agency reviewed plaintiff's application. The parties agree that under the BCNR's own regulations, 32 C.F.R. § 723.3(e)(4), the BCNR was required to address the applicability of the MWPA. See Def.'s Motion, ECF No. 13, at 6; Pl.'s Opp., ECF No. 14, at 4. Defendant's admission of legal error is a "substantial and legitimate" concern justifying a voluntary remand. See Citizens Against Pellissippi Parkway Extension, 375 F.3d at 416 (noting that it may be "an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action").

Plaintiff opposes a remand on the ground that it would be futile because the BCNR often fails to adequately review

---

[2] See also Macktal v. Chao, 286 F.3d 822, 826 (5th Cir. 2002) ("An agency may not reconsider its own decision if to do so would be arbitrary, capricious, or an abuse of discretion.").

applications and rarely finds MWPA violations.  Pl.'s Opp., ECF No. 14, at 6-10.[3]  Even assuming the Court may consider the statistical evidence plaintiff cites, which defendant disputes, she has not shown that remand would be futile.  This is not a case where "[t]here is not the slightest uncertainty as to the outcome" on remand, A.L. Pharma, 62 F.3d at 1489, or where "reversal and remand would be an 'idle and useless formality' . . . because there is not the slightest doubt that the [BCNR] would simply reaffirm its order," Am. Geri-Care, 697 F.2d at 64.  Remand is appropriate when, as here, there is some chance the agency will come to a different conclusion.  E.g., Nat'l Nutritional Foods Ass'n v. FDA, 504 F.2d 761, 798 & n.65 (2d Cir. 1974) (remanding to the FDA to allow for cross-examination of an expert because the court "simply cannot assume that if [the expert's testimony] had been shattered by vigorous cross-examination, however unlikely that may be, the FDA or we would reach the same result").

---

[3] She also cites internal BCNR training materials that apparently misstate the MWPA's definition of "protected communication" in an inappropriately limited way.  See Pl.'s Supp. Br., ECF No. 22.  Defendant admits that the training materials plaintiff identified misstate the law and represents that the BCNR has corrected its training program accordingly.  Def.'s Reply to Supp. Br., ECF No. 28.  The BCNR's changed position was apparently spurred by a ruling that remanded a case after the BCNR applied the same incorrect definition of "protected communication" that plaintiff identifies here.  See Goode Aff., ECF No. 31, at 2 (discussing Penland v. Mabus, 181 F. Supp. 3d 100 (D.D.C. 2016)).

7

Plaintiff also argues that remand is inappropriate because it would delay the proceedings. She cites no cases holding that an expected delay in proceedings provides a court with a sufficient basis for denying a voluntary remand. See Pl.'s Opp., ECF No. 14, at 10-12. An appellate tribunal may always hasten the final resolution of a case by declining a remand and undertaking to decide for itself all the issues presented; but, like any appellate body, this Court "is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." Fla. Power & Light Co., 470 U.S. at 744.

To some extent, plaintiff's "delay" argument merely restates her futility argument: since it is unlikely the BCNR will come to a different decision, the case will likely come before this Court again. But, even if that is true, remand is appropriate because the Court will have the benefit of reviewing a more fully developed record in the event plaintiff brings another APA challenge. This is particularly true in this case because, after the BCNR's review of her MWPA claim on remand, plaintiff will be entitled to an administrative appeal that was not available after the BCNR's first decision. 32 C.F.R. § 723.7(b) ("[I]n cases involving the [MWPA,] . . . unless the full relief requested is granted, [the Secretary will] inform applicants of their right to request review of the decision by

8

the Secretary of Defense."). In general, granting an agency's voluntary request for a remand allows "agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." Ethyl Corp., 989 F.2d at 524. Thus, judicial economy weighs in favor of, not against, remanding the case.

B. Proceedings on Remand

In the event of a remand, plaintiff has urged the Court to impose several requirements on the BCNR. I decline to order the BCNR to adhere to most of plaintiff's requests. However, I agree with plaintiff that some aspects of the BCNR's first decision must be reconsidered on remand.

Plaintiff first notes that the BCNR's decision stated that "[t]here is no evidence in the record, and you provided none, to support your assertions" of sexual harassment and discrimination. She argues that this was erroneous because of the sworn statements she provided supporting her allegations. While she acknowledges that the BCNR regulations give a "presumption of regularity to support the official actions of public officers," she notes that this presumption is rebuttable with "substantial evidence to the contrary." 32 C.F.R. § 723.3(e)(2). She asks this Court to (1) direct that there is undisputed evidence in the record that she filed a sexual

9

harassment complaint, and (2) in the absence of further evidence, require the BCNR to determine whether the sworn statements are sufficient to rebut the presumption of regularity and, if not, explain why.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Accordingly, the Court cannot direct the BCNR to make a particular evidentiary finding. "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Id. (citing Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). The Court "will not disturb the decision of an agency that has" done so. Pettiford v. Sec'y of the Navy, 774 F. Supp. 2d 173, 181 (D.D.C. 2011) (citation omitted). But "[t]o enable a court to perform that review and ensure that the decision is not 'utterly unreviewable,' a military corrections board 'must give a reason that a court can measure, albeit with all due deference, against the "arbitrary or capricious" standard of the APA.'" Id. at 182 (quoting Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989)). In this case, although the BCNR is only required to "include a brief statement of the

10

grounds for denial," the statement "shall include the reasons for the determination that relief should not be granted, including . . . the essential facts upon which the denial is based."  32 C.F.R. § 723.3(e)(3)-(4).  Therefore, if on remand the BCNR rejects the evidence provided by plaintiff, it must provide an adequate explanation.[4]

Plaintiff also requests that the Court order certain discovery procedures and an in-person evidentiary hearing.  The Court cannot grant this relief.  Defendant has considerable discretion in fashioning procedures for the BCNR to follow.  See 10 U.S.C. § 1552(a)(3)(A) ("Corrections . . . shall be made under procedures established by the Secretary concerned.").  As plaintiff recognizes, under the currently applicable regulations, rights to discovery and hearings are discretionary.  See, e.g., 32 C.F.R. § 723.3(e)(1), .4.  Whatever the merits of plaintiff's arguments as a matter of policy, the Court cannot order the BCNR to grant her discovery and an in-person hearing.

Moreover, plaintiff's request for mandatory deadlines is

---

[4] Contrary to defendant's assertion, ECF No. 16 at 10-11, the BCNR's statement that plaintiff provided "no evidence" cannot be read simply as a statement that she did not provide substantial evidence.  Even if it could be, moreover, such a conclusory statement is insufficient to allow for meaningful judicial review.  Under the BCNR's regulations and principles of administrative law, the BCNR must provide some explanation for its decision.  As it stands, the "brief statement went awry" by incorrectly failing to acknowledge the evidence provided by plaintiff.  Penland, 181 F. Supp. 3d at 105.

unwarranted.  Defendant concedes that it is within this Court's power to grant such a request.  ECF No. 16 at 11.  But court-imposed deadlines are not necessary here.  The regulations governing the BCNR provide that decisions in cases involving the MWPA must be issued "180 days after receipt of the case."  32 C.F.R. § 723.7(b).  Plaintiff has not shown any need for an especially prompt decision or that she would be prejudiced by the 180-day timeline.

Finally, plaintiff states that the BCNR did not address all her arguments.  E.g., ECF No. 14 at 1.  On remand, the BCNR must ensure that it considers all of plaintiff's "arguments that are not facially frivolous."  Frizelle v. Slater, 111 F.3d 172, 174 (D.C. Cir. 1997).  "[I]f a military board of corrections 'fail[s] to address . . . arguments that are not facially frivolous,' its decision must be reversed and the matter remanded."  Pettiford, 774 F. Supp. 2d at 182 (quoting Frizelle, 111 F.3d at 174) (other citations omitted); see also id. at 185 ("On remand, the BCNR is free to reject plaintiff's argument, but 'it must expressly indicate that it has done so' and 'explain its rationale.'" (citations omitted)).

IV. Conclusion

Accordingly, defendant's motion for voluntary remand, ECF No. 13, is granted.  The case is remanded to the BCNR for further proceedings consistent with this Order.  The Clerk may

enter judgment and close the file.

So ordered this 11th day of April 2019.

/RNC/  
Robert N. Chatigny  
United States District Judge